UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10263-RGS

JOHN CORBIN

v.

BRIAN GILLEN and ANTONE MONIZ

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

December 30, 2011

STEARNS, D.J.

John Corbin, a correctional officer employed by the Plymouth County Sheriff's Department (Department), brought this First Amendment action under 42 U.S.C. § 1983, alleging that defendants Brian Gillen and Antone Moniz violated his right to free speech by disciplining him for disparaging remarks he made to a Plymouth County selectman.[1] Defendants jointly filed a motion for summary judgment on November 8, 2011, after the usual course of discovery.

BACKGROUND

---

[1] Gillen and Moniz are the Superintendent and Assistant Superintendent, respectively, of the Department. They are responsible for the Department's administrative operations and are Corbin's ultimate supervisors. Defs.' Statement of Undisputed Facts (SOUF) ¶¶ 2-3.

The facts, in the light most favorable to Corbin as the nonmoving party, are as follows.[2] Corbin has worked as a correctional officer for the Department since November of 1987, and is "well known to be politically active in Plymouth County." Defs.' SOUF ¶ 1; Compl. ¶ 1.[3] Corbin has actively supported candidates for the office of Plymouth County Sheriff. Defs.' SOUF ¶ 15.

On or about January 9, 2008, Corbin was working his regular shift with fellow officer John Gillis, supervising inmates inside a housing unit at the Plymouth Jail. Defs.' SOUF ¶¶ 12, 19. Christopher Flynn, a selectman for the town of Bridgewater, was escorted into the unit by Sergeant Danette Britto as part of a tour of the Jail.[4] *Id.* ¶ 12. Flynn was introduced to Corbin and the two men briefly chatted. Compl. ¶ 11. Flynn asked Corbin to name the Sheriff for whom he had most enjoyed working. *Id.* Corbin identified former Sheriff Peter Flynn. *Id.* Flynn, a great-nephew of the former

---

[2] *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993).

[3] Corbin states in his Opposition that he "does not disagree with the statement of undisputed material facts set forth by Defendants . . . ." Pl.'s Opp'n. *See Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996) ("[f]ailure to provide a separate statement of disputed facts results in the district court's taking of [defendant's] statement of uncontested facts as admitted.").

[4] Corbin acknowledges that he regularly spoke to visitors touring the Jail, answering questions about the Department, the Jail, and his job. Corbin Dep. at 42-45. Corbin acknowledged that when he spoke to visitors he was doing so on behalf of the Department. *Id.* at 45.

Sheriff, told Corbin that was "a good answer." *Id.* Corbin and Flynn then "continued to discuss local politics" for several more minutes. *Id.* While the two men spoke, Britto stood within earshot of their conversation. Defs.' SOUF ¶ 13.

Britto later told Gillen and Moniz that Corbin stated to Flynn that, "This place sucks," that he hated the current Sheriff, Joseph McDonald, and that McDonald "sucks." *Id.* On January 15, 2008, Assistant Deputy Superintendent Michael Duggan interviewed Flynn about his conversation with Corbin. *Id.* ¶ 16. Flynn verified Britto's statement that Corbin had told him that he hated his job and that he hated Sheriff McDonald, and that the Sheriff "didn't know what he's doing." *Id.* Flynn denied, however, that Corbin had used the word "sucked" in describing McDonald. *Id.*

On January 17, 2008, Corbin was interviewed by Department investigators. *Id.* ¶ 17. Corbin denied making pejorative comments about McDonald to Flynn, although during the interview he referred to the Sheriff as a "moron." *Id.* On January 18, 2008, the Department suspended Corbin without pay, pending further investigation.[5] *Id.* ¶ 21.

---

[5] The Department states that it suspended Corbin because of his "snowballing" misconduct, which included other instances of alleged insubordination. *Id.* The day after Corbin was interviewed about the Flynn incident, Corbin derided Gillis for memorializing his version of the Flynn encounter in a formal report to the investigators. Corbin said to Gillis, "Good you're writing your report, you got to make the Special Sheriff happy." *Id.* ¶ 19. The statement was perceived by the Department as an attempted "interference" with a witness. *Id.* Also, on the same day, Corbin was overheard speaking on the telephone in the training area of the Department and saying

On January 22, 2008, Corbin called Tamara Race, a reporter for the local Quincy Patriot Ledger newspaper. *Id.* ¶ 22; Compl. ¶ 14. In an article published on January 24, 2008, Race wrote that Corbin believed that he had been suspended because he had "bad-mouth[ed] Sheriff Joseph McDonald in a private conversation." Defs.' Mot. for Summ. J., Ex. M. Race quoted Corbin as follows: "'I expressed my distaste for the current administration,' he said. 'I said there was no leadership, and that it was total chaos and a complete circus.' . . . Corbin said he believes Flynn shared parts of the conversation with special Sheriff Gerald Pudolsky, prompting the disciplinary action.'" *Id*. Corbin contends that Race misquoted him and, in any event, he intended his remarks to be off-the-record. Compl. ¶¶ 14-15; Defs.' SOUF ¶ 25.

On January 30, 2008, Corbin was formally suspended without pay for thirty days. Defs.' SOUF ¶ 29. As reasons, the Department cited Corbin's "disrespectful and unprofessional" encounter with Flynn, the reference to the Sheriff as a "moron" in the interview with investigators, the telephone conversation in which Corbin called the special Sheriff an asshole, and his failure to cooperate fully with the investigation. *Id.*

---

to an unknown party that, "He's just an asshole. He used to be a prosecuting attorney. Everything's a big deal. It's always something." *Id.* ¶ 20. The reference appears to have been to a specially appointed Sheriff on McDonald's command staff who had previously served as an Assistant District Attorney.

4

Corbin was also ordered to undergo a fitness for duty evaluation prior to returning to work. *Id.* ¶ 30.

Corbin invoked his right to arbitrate both the thirty-day suspension and the order that he submit to a psychological evaluation. *Id.* The arbitrator found that although Corbin had violated the Department's regulations by acting in a disrespectful and insubordinate manner, he deserved only a six day suspension. The arbitrator also found that the Department had improperly ordered Corbin to undergo the evaluation as there was no "real question about his health to justify [it]."[6] Defs.' Mot. for Summ. J., Ex. Q at 15-16.

Corbin returned to work without incident until April of 2008. On April 24, 2008, Corbin was cited for not making all of the required hourly rounds of his unit and for failing to record the rounds in the unit logbook. Defs.' SOUF ¶¶ 32-36.[7] On May 2, 2008, Corbin was notified that he was being suspended for fifteen days as a disciplinary penalty. *Id.* ¶ 38. Corbin concedes that he failed to properly log his

---

[6] The arbitrator required the Department to reimburse Corbin for his twenty-four days of lost pay, to expunge the results of the psychological evaluation from his personnel file, and to return the one day of sick leave that Corbin was forced to take while undergoing the evaluation. *Id.* at 17. The Department complied with arbitrator's decision. Defs.' SOUF ¶ 31.

[7] Surveillance footage from the housing unit showed that Corbin had not conducted all of his hourly rounds. *Id.* ¶ 36.

5

hourly rounds, *id.* ¶ 37, but claims that the disciplinary action was taken solely because of his support for a candidate running against McDonald in the then-upcoming 2010 election.[8]

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.*

The nonmoving party "must adduce specific, provable facts demonstrating that there is a triable issue." *Id.* (internal quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[8] Corbin had pasted a bumper sticker on his personal car in early April of 2008 supporting a rival candidate. Compl. ¶ 24.

247-248 (1986) (emphases in original). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

### *Corbin's First Amendment Right to Free Speech*

"Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007). To be protected, the plaintiff-employee's speech must be on a matter of public concern, and the employee's interest in expression must not be outweighed by the government's interest as an employer in promoting the efficient delivery of its services.[9] *Waters v. Churchill*, 511 U.S. 661, 668 (1994). Matters of inherent concern to the public include official malfeasance, abuse of office, and neglect of duties. *Curran*, 509 F.3d at 46; *Jordan v. Carter*, 428 F.3d 67, 73 (1st Cir. 2005). Speech that is vulgar, insulting or defiant is entitled to much less weight. *Curran*, 509 F.3d at 49.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983). "[T]he greater the

---

[9] This weighing of the employee's rights and the employer's interests is often referred to as the "*Pickering* balancing test," after *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

7

value of the subject of the speech to the public, the more the balance tilts towards permitting the [government] employee to express himself." *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 53 (1st Cir. 2003). An employee's First Amendment interests are entitled to the greatest weight "where he is acting as a whistleblower in exposing government corruption." *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988). "An employee who makes an unprotected statement is not immunized from discipline by the fact that this statement is surrounded by protected statements." *Waters*, 511 U.S. at 681.

Corbin and defendants agree that Corbin was suspended primarily because of the remarks he made to Flynn deriding Sheriff McDonald in January of 2008.[10] Corbin maintains that his comments were political in nature, and insofar as they conveyed his opinion about the Sheriff's fitness to hold office, involved a matter of public concern.[11]

---

[10] Corbin challenges the Department's thirty-day suspension, psychological evaluation, and his loss of a sick day. Because the arbitrator remitted the length of the suspension, awarded back-pay and restoration of the lost sick day, and the expungement of the negative evaluation from Corbin's personnel file, the only potential issue of personal damages that remains is the six-day suspension upheld by the arbitrator.

[11] In his Complaint and Opposition, Corbin denies making any statements about the Sheriff. However, his denials come only after admitting that he does not dispute the defendants' SOUF, and, in any event, he may not now dispute such facts because he failed to file a fact statement of his own. *See United States v. Parcel of Land & Residence at 18 Oakwood St., Dorchester, Massachusetts*, 958 F.2d 1, 5 (1st Cir. 1992) (the failure of a nonmoving party to submit a statement of disputed facts has the legal effect of admitting the moving party's factual assertions). Moreover, any statements Corbin relies on that are contained "in a memorandum or lawyer's brief are

8

Defendants, for their part, contend that Corbin's speech insulting the Sheriff and demeaning the Department had no redeeming First Amendment value.[12] (Although Corbin does not dispute the fact that he also criticized the Sheriff in his conversation with reporter Race, he insists that his comments were made off-the-record and not intended for publication).[13]

Corbin's First Amendment claim fails as a matter of law for two reasons. In the first instance, the remarks to Flynn (whatever the value of their content) were made in the performance of Corbin's duties as a correctional officer and were therefore not

---

insufficient, for summary judgment purposes, to establish material facts." *Corrada Betances v. Sea-Land Serv., Inc.*, 248 F.3d 40, 43 (1st Cir. 2001).

[12] Whether Corbin stated that he "hated" the Sheriff and described him as a "moron," or whether he used more colorful language to make the same point is not terribly material. *See Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993) (a material fact is one which has the "potential to affect the outcome of the suit under applicable law.").

[13] Race, who testified at the arbitration hearing, disputed whether Corbin had spoken to her on an off-the-record basis. Her version of what Corbin had told her about the encounter with Flynn largely tracked Flynn's statement to the investigators and the testimony of Britto at the arbitration hearing. "I asked what he said that he thought might have gotten him into trouble. His response was that he made disparaging commends [sic] to this person given [sic] his opinion of the administration; he expressed his opinion and believes it was overheard." Defs.' Mot. for Summ. J., Ex. Q at 9. Her story was published under the headline: "Correction officer blasts suspension: Says it's political retribution for remarks in private conversation." Defs.' Mot. for Summ. J., Ex. M. In his summary judgment pleadings, Corbin does not deny making disparaging remarks about Sheriff McDonald to Race.

protected speech. Corbin, it will be recalled, testified that he was frequently called upon to speak to visitors during jail tours and that in doing so he spoke as a representative of the Department. *See* fn. 4, *supra*.

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court, in effect, carved an exception out of the First Amendment for work-related speech. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Court in *Garcetti* distinguished between an employee speaking "as a citizen addressing a matter of public concern," which may warrant First Amendment protection, and an employee who is "simply performing his or her job duties," which is subject to the employer's control. *Id.* at 423. Corbin's disparaging remarks about the Sheriff and the Department made while on duty, in uniform, and in close proximity to other Department employees and inmates, were in plain violation of Department regulations. *See* Defs.' Mot. for Summ. J., Ex. E at 14 (prohibiting employees from engaging in disrespectful and insubordinate conduct). The Department has an undeniable interest in punishing insubordination in order to promote institutional order and preserve a cohesive chain of

command.[14] *See Jordan*, 428 F.3d at 74, quoting *Moore v. Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) ("[W]e acknowledge that the government's interest 'is particularly acute in the context of law enforcement, where there is a heightened interest . . . in maintaining discipline and harmony among employees . . . .'").

In the second instance, there is nothing in the substantive content of Corbin's "speech" (whether by his version or that of the other witnesses) that penetrates the realm of public concern. In *Curran*, a case very much on point, an off-duty Essex County correctional officer used the Essex County Correctional Officers Association website to post a statement accusing the Essex County Sheriff "of using political favoritism rather than merit in making personnel decisions as to non-policymaking employees." 509 F.3d at 40, 46. The First Circuit held that there was "public interest value" in the contents of the posting. *Id.* at 46. The Court contrasted this protected speech with prior comments that Curran had "made in the course of his duties within the Department, to his superiors, and during a discussion of official Department policy." *Id.* at 45-46. The latter comments were unprotected, as they involved internal complaints about the management of the Department that did not rise to matters of public concern. *Id.* at 46. *See also Jordan*, 428 F.3d at 73 (discussions of "internal

---

[14] There are also legitimate safety concerns that arise when a correctional officer acts insubordinately in front of inmates.

11

working conditions" are not matters of public interest); *Rosado-Quinones v. Toledo*, 528 F.3d 1, 5 (1st Cir. 2008) (accusations about officers in police department that were personal in nature did not "implicate the ability of [law enforcement] personnel to carry out their responsibility to the public, i.e., the provision of competent law enforcement services" and thus did not elevate the comments to matters of public concern.). Here, Corbin's insulting and disparaging remarks about the Sheriff (a "moron" whom he "hated") and the intensity of his dislike of his job with the Department had even less relevance to any meaningful public discourse. *See Meaney v. Dever*, 326 F.3d 283, 289 (1st Cir. 2003) (an employee's expression of frustration with a superior does not qualify as a matter of public concern).[15]

*Corbin's Political Affiliation Claim*

The Supreme Court, in a series of decisions beginning with *Elrod v. Burns*, 427 U.S. 347 (1976), has declared it a violation of the First Amendment for government officials to take adverse actions – at least of a certain level of severity and with certain exceptions – against government employees based on their political party affiliation. *See* 427 U.S. at 373. "A plaintiff asserting a political discrimination claim under the First Amendment bears the preliminary burden of producing competent direct or

---

[15] The statement Corbin made to Race about alleged political favoritism in the Department, while arguably qualifying as a matter of public concern, was, according to Corbin, never intended for public dissemination.

circumstantial evidence that political affiliation played a 'substantial' role in the adverse employment decision." *Jirau-Bernal v. Agrait*, 37 F.3d 1, 3 (1st Cir. 1994), citing *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir.1990).

Corbin claims that he was wrongly suspended in May of 2008 for displaying a bumper sticker on his personal car supporting McDonald's election opponent. Corbin concedes that he has "no proof" that either Gillen or Moniz knew of the bumper sticker before issuing the suspension, or that either defendant was motivated by his political affiliation. Defs.' SOUF ¶ 39. Corbin relies solely on the proximity of the two events. (The bumper sticker was placed on the car in April of 2008). This is insufficient. *See Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 28 (1st Cir. 2008) ("The mere fact that an adverse action was taken after an employee exercises First Amendment rights is not enough to establish a prima facie case."). More importantly, Corbin does not contest that he violated Department regulations regarding the making and recording of hourly rounds, which was the reasonable explanation given by the Department for the imposition of discipline. *See* Def's SOUF ¶ 37.[16]

---

[16] In his Complaint, Corbin alleges that defendants' actions have caused him to suffer emotional distress, humiliation, financial harm, and a "loss of status" in the Department. Compl. ¶ 27. He also alleges that defendants' actions created a hostile work environment, which made it difficult for him to perform the duties of his job. *Id.* Corbin does not plead facts to support these allegations.

ORDER

For the foregoing reasons, defendants' motion for summary judgment is ALLOWED.[17] The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[17] Defendants raise a qualified immunity defense, which given the court's findings, is moot. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (where qualified immunity is raised "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").